In re C. Steven McDANIEL, Frank M. Raushel, and James R. Wild.

No. 01–1307.

United States Court of Appeals, Federal Circuit.

June 19, 2002.

C. Steven McDaniel, McDaniel & Associates, P.C., of Austin, TX, argued for appellants.

Kristin L. Yohannan, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, VA, argued for appellee. With her on the brief were John M. Whealan, Solicitor; and Steven Walsh, Associate Solicitor.

Before MAYER, Chief Judge, LINN and PROST, Circuit Judges.

Opinion for the court filed by Curcuit Judge LINN. Opinion dissenting-in-part filed by Chief Judge MAYER.

LINN, Circuit Judge.

Dr. C. Steven McDaniel, Dr. Frank M. Raushel, and Dr. James R. Wild (collectively "McDaniel") appeal from the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences ("Board") affirming the rejections of Claims 53–64 of McDaniel's Application No. 08/252,384 as unpatentable under 35 U.S.C. §§ 102(a) and 102(b) and finding it unnecessary to reach the rejections of the claims under 35 U.S.C. § 103. *Ex parte McDaniel,* No.1997–2138 (Bd. Pat. Appeals & Interferences Jan. 8, 2001). Because substantial evidence supports the § 102 rejections of Claims 53–54 and 58–63, the Board did not err in affirming these rejections. However, the Board incorrectly interpreted 37 C.F.R. § 1.192(c)(7) to permit it to select Claim 53 as representative of separately rejected Claims 55–57 and, thus,

erred in failing to reach the § 103 rejections of those claims. The Board also committed procedural error in affirming the rejection of Claim 64 under § 102 rather than § 103, but such error was harmless.

## BACKGROUND

McDaniel's '384 application relates to an organophosphorus detoxifying ("*opd*") gene and a recombinant organophosphorus acid anhydrase ("OPA") enzyme derived from that gene. This gene and enzyme are said to be useful in detoxifying organophosphorus compounds, which are commonly found in pesticides and in chemical warfare agents such as nerve gases. The application discloses the DNA sequence of the *opd* gene, the OPA enzyme derived from the *opd* gene, expression vectors comprising the *opd* gene, and transformed cells and transgenic organisms comprising the *opd* gene on an expression vector. The application also discloses methods for making and purifying the OPA, for using either the OPA itself or recombinant *opd* microorganisms to detoxify organophosphorus compounds, for detecting organophosphorus compounds in the environment, and for protecting beneficial insects against organophosphorus-based insecticides. Claims 53, 57, and 64 of the '384 application are reproduced below.

53. A method for detoxifying an organophosphorus compound comprising exposing said compound to recombinant bacterial organophosphorus acid anhydrase.

57. The method of claim 53 wherein said organophosphorus compound is in air.

64. A method of preventing poisoning of a locus by an organophosphorus compound by applying recombinant organophosphorus acid anhydrase to said locus before said compound contacts said locus.

Claims 53–64 of the '384 application were finally rejected on August 24, 1994. The grounds of rejection relevant to the present appeal are as follows.

Claims 53–54 and 58–63 were rejected under 35 U.S.C. § 102(a), or alternatively under 35 U.S.C. § 103, over C. Steven McDaniel et al., *Cloning and Sequencing of a Plasmid Borne Gene (opd) Encoding a Phosphotriesterase*, 170 J. Bacteriology 2306–11 (1988) ("McDaniel (BY)"), or over Linda L. Harper et al., *Dissimilar Plasmids Isolated from Pseudomonas diminuta MG and a Flavobacterium sp. (ATCC 27551) Contain Identical opd Genes*, 54 Applied and Envtl. Microbiology 2586–89 (1988) ("Harper").

Claims 53, 58, and 60 were rejected under 35 U.S.C. § 102(b) over J.R. Wild et al., *Cloning, Sequencing and Characterization of OPD Genes and Their Broad Spectrum Organophosphate Hydrolases From Soil Bacteria*, in *Proceedings of the 1986 U.S. Army Chemical Research, Development and Engineering Center Scientific Conference on Chemical Defense Research* 629 (1986) ("Wild").

Claims 53–54 and 60 were rejected under 35 U.S.C. § 102(b) over Claude Steven McDaniel, *Plasmid Mediated Degradation of Organophosphate Pesticides* 111–64 (1985) (unpublished Ph.D. dissertation, Texas A & M University) (on file with the Texas A & M University Library) ("McDaniel (AZ)").

Claims 61–63 were rejected under 35 U.S.C. § 102(b), or alternatively under 35 U.S.C. § 103, over Wild or McDaniel (AZ).

Claims 53–54 and 59–64 were rejected under 35 U.S.C. § 103 over a combination of references, together with either McDaniel (BY) or Wild.

Claims 55–57 were rejected under 35 U.S.C. § 103 over the same combination of references, together with McDaniel (BY)

or Wild, and further in view of Grot et al., U.S. Patent No. 4,518,650 ("Grot").

McDaniel appealed these rejections to the Board. Based on McDaniel's statement that "[c]laims 53–64 are all properly of a single group," the Board grouped all the claims together on appeal, and selected claim 53 as representative of the entire group. *Ex parte McDaniel,* slip op. at 5. The Board rejected McDaniel's argument that the Declaration of Invention filed with the '384 application was sufficient under *In re Katz,* 687 F.2d 450, 215 USPQ 14 (CCPA 1982), to serve as a disclaimer of inventorship by Linda L. Harper and Dr. Charles E. Miller, who were listed as co-authors on the McDaniel (BY) and Harper references. Accordingly, the Board held that both McDaniel (BY) and Harper were proper § 102(a) prior art. *Ex parte McDaniel,* slip op. at 13. The Board then affirmed the § 102 rejections, applied to all of the claims. Having affirmed the § 102 rejections, the Board then found it "unnecessary to separately consider the rejection of the claims under 35 U.S.C. § 103." *Id.* at 17.

McDaniel timely appealed the Board's decision to this court, and we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

### A. Standard of Review

Our standard of review of a decision of the Board is set forth in the Administrative Procedure Act, 5 U.S.C. § 706. *Dickinson v. Zurko,* 527 U.S. 150, 154, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930, 1932 (1999). Under that statutory provision, we will set aside legal actions of the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and set aside factual findings that are "unsupported by substantial evidence." 5 U.S.C. § 706 (2000); *In re Gartside,* 203 F.3d 1305, 1316, 53 USPQ2d 1769, 1775 (Fed.Cir.2000).

■ An agency's interpretation of its own regulations is normally entitled to considerable deference, and that interpretation ordinarily will be accepted unless it is plainly erroneous or inconsistent with the regulation. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1561 (Fed. Cir.1996). However, this court in *Dethmers Manufacturing Co., Inc. v. Automatic Equipment Manufacturing Co.,* 272 F.3d 1365, 1370, 60 USPQ2d 1929, 1932 (Fed. Cir. 2001), was constrained to apply not a deferential but a de novo standard of review to the Patent and Trademark Office's interpretation of its own reissue rule, citing *Nupla Corp. v. IXL Manufacturing Co.,* 114 F.3d 191, 42 USPQ2d 1711 (Fed. Cir. 1997) and *In re Constant,* 827 F.2d 728, 3 USPQ2d 1479).

■ Anticipation is a question of fact. *Rapoport v. Dement,* 254 F.3d 1053, 1057, 59 USPQ2d 1215, 1218 (Fed.Cir.2001).

### B. Analysis

### I.

On appeal to the Board from a final rejection of claims by the Examiner, the claims are grouped in accordance with 37 C.F.R. § 1.192(c)(7):

> For *each ground of rejection* which appellant contests and which applies to a group of two or more claims, the Board shall select a single claim from the group and shall decide the appeal as to that ground of rejection on the basis of that claim alone unless a statement is included that the claims of the group do not stand or fall together and ... appellant explains why the claims of the group are believed to be separately patentable. Merely pointing out differences in what the claims cover is not an

argument as to why the claims are separately patentable.

(Emphasis added.) The Manual of Patent Examining Procedure ("MPEP"), in explaining this regulation, notes that it

> requires the appellant to perform two affirmative acts in his or her brief in order to have the separate patentability of a plurality of claims *subject to the same rejection* considered. The appellant must (A) state that the claims do not stand or fall together and (B) present arguments why the claims subject to the same rejection are separately patentable.

MPEP § 1206 (8th ed. Aug.2001) (emphasis added).

The rule operates to relieve the Board from having to review—and an applicant from having to argue—the myriad of distinctions that might exist among claims, where those distinctions are, in and of themselves, of no patentable consequence to a contested rejection. For example, if two commonly rejected but patentably distinct claims are considered by an applicant to be patentably distinguishable over the cited art for reasons applicable to both claims, there is no reason why the Board, or an applicant for that matter, should have to be concerned with the distinctions between the claims themselves in the rejected group. If the applicant's commonly applicable reasons for patentability have merit, the rejection of both claims will be overcome, quite apart from any patentable distinctions that exist between the claims. The rule acts as the default that permits the Board to designate one claim to serve as representative of others in a commonly rejected group and to focus its attention on only those matters that are dispositive of the appeal, unless applicant overcomes the default to assure separate review of individual claims by meeting the two conditions specified in the rule.

Thus, to assure separate review by the Board of individual claims within each group of claims subject to a common ground of rejection, an appellant's brief to the Board must contain a clear statement for each rejection: (a) asserting that the patentability of claims within the group of claims subject to this rejection do not stand or fall together, and (b) identifying which individual claim or claims within the group are separately patentable and the reasons why the examiner's rejection should not be sustained. *See* 37 C.F.R. § 1.192(c)(7) (2001). If the brief fails to meet either requirement, the Board is free to select a single claim from each group of claims subject to a common ground of rejection as representative of all claims in that group and to decide the appeal of that rejection based solely on the selected representative claim.

## II.

Here, McDaniel failed to meet both requirements of 37 C.F.R. § 1.192(c)(7) in his brief to the Board. Rather than asserting that the claims on appeal "do not stand or fall together," he affirmatively stated that "claims 53–64 are all properly of a single group." Moreover, he argued patentability generally, without setting forth separate reasons for patentability with respect to any one or more claims apart from the others. The Board interpreted McDaniel's statement and his general argument to mean that, as to the questions of patentability raised by the appeal, the claims "stand and fall together." *Ex parte McDaniel,* slip op. at 5. At oral argument before this court, Dr. McDaniel was asked specifically about this issue, and he affirmed that his position both before this court and before the Board was that all the claims stand or fall based on claim 53. By failing to argue for separate patentability of his claims in his brief to the Board, and by stating in that

brief that "Claims 53–64 are all properly of a single group," McDaniel has waived the right to insist that the Board separately review the patentability of individual claims within each group of rejected claims. His reassertion at oral argument before this court of his position that all of the claims stand or fall together with claim 53 specifically precludes any challenge by McDaniel to the Board's selection of claim 53 as being representative of the claims grouped with claim 53 in the Examiner's rejections.

■ The Board selected Claim 53 as representative of claims 53–64, and noted that "the determination reached in this decision as to the patentability of Claim 53 is considered dispositive of the question of patentability of the remaining claims." *Id.* at 5. The Board did not err in selecting Claim 53 as a representative claim for the purpose of deciding the appeal of the rejections under 35 U.S.C. § 102, encompassing Claims 53–54 and 58–63. All of these claims share a common ground of rejection with Claim 53. The only § 102 rejection that does not include Claim 53 is a § 102(b) rejection of Claims 61–63 as anticipated by Wild or McDaniel (AZ). However, the Examiner, in separate rejections, also found Claim 53 to be anticipated by Wild as well as by McDaniel (AZ) under 35 U.S.C. § 102(b). Because Claims 61–63 were rejected over some of the same references and under the same statutory provision as Claim 53, they shared common grounds of rejection with Claim 53. Therefore, the Board did not err in selecting Claim 53 as representative of the § 102(b) rejection of Claims 61–63 over Wild or McDaniel (AZ).

### III.

■■ However, the Board did err in selecting Claim 53 as a representative claim for the purpose of deciding the appeal of Claims 55–57. Those claims were rejected under 35 U.S.C. § 103 on a different ground than the § 103 rejection of Claim 53: the § 103 rejection of Claims 55–57 cited Grot in addition to the combination of references cited against Claim 53. Thus, Claims 55–57 did not share a common ground of rejection with Claim 53. 37 C.F.R. § 1.192(c)(7) does not give the Board carte blanche to ignore the distinctions between separate grounds of rejection and to select the broadest claim rejected on one ground as a representative of a separate group of claims subject to a different ground of rejection. The applicant has the right to have each of the grounds of rejection relied on by the Examiner reviewed independently by the Board under 35 U.S.C. § 6(b) (providing that "[t]he Board of Patent Appeals and Interferences *shall* ... review adverse *decisions of examiners* upon applications for patents") (emphasis added). Simplification and expedition of appeals cannot justify the Board's conflating separately stated grounds of rejection by selecting, for the purpose of deciding an appeal as to one ground of rejection, a representative claim which is not itself subject to that ground of rejection. 37 C.F.R. § 1.192(c)(7) does not override an applicant's right under the statute to have each contested ground of rejection by an examiner reviewed and measured against the scope of at least one claim within the group of claims subject to that ground of rejection. *See* 35 U.S.C. § 6(b) (2000). Moreover, to permit the Board to act otherwise would be tantamount to the Board's subjecting the claims to a new ground of rejection without following the procedures specified in 37 C.F.R. § 1.196(b) (permitting an applicant in this situation either to submit an appropriate amendment for reconsideration by the examiner or to request rehearing by the Board).

Here, instead of directly addressing the separate § 103 rejections, the Board sim-

ply subsumed the § 103 rejections into the § 102 rejections and affirmed what it characterized as "[t]he Examiner's determination that the claims pending in this application are unpatentable under 35 U.S.C. § 102(a) and/or 35 U.S.C. § 102(b)." *Ex parte McDaniel*, slip op. at 17. In fact, the record shows that there were no § 102 rejections outstanding as to Claims 55–57 and, thus, no determination to be affirmed on that ground. This affirmance of a nonexistent rejection violated the statutory mandate that the Board review "adverse *decisions of examiners* upon applications for patents," 35 U.S.C. § 6(b) (2000) (emphasis added), as well as the strictures of 37 C.F.R. § 1.196(a), which specifies that with respect to the grounds of rejection before it, the Board, in deciding the appeal, must either "affirm or reverse *the decision of the examiner* ... on the grounds and on the claims specified by the examiner, or remand the application to the examiner for further consideration" (emphasis added).

■ The Board interpreted 37 C.F.R. § 1.192(c)(7) to permit it to select a single claim as representative of a group of claims not subject to a common ground of rejection, once the applicant stated that all of the claims on appeal were "properly of a single group." The Supreme Court has consistently held that courts should defer to an agency's interpretation of its own regulations. *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Stinson v. United States*, 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). We have formulated the degree of this deference variously as "substantial," *American Express Co. v. United States*, 262 F.3d 1376, 1382–83 (Fed.Cir.2001), and, in the context of a ruling of the Board, as "considerable respect," *Kubota v. Shibuya*, 999 F.2d 517, 520, 27 USPQ2d 1418, 1420 (Fed.Cir.1993). However, such deference is not appropriate where the agency's interpretation is "plainly errone-

ous or inconsistent with the regulation." *Auer*, 519 U.S. at 461, 117 S.Ct. 905 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). Deference also is not appropriate under the rule in *Dethmers*, subjecting an agency's interpretation of its own reissue rule to a de novo standard of review. *Dethmers*, 272 F.3d at 1370, 60 USPQ2d at 1932. Because the Board's interpretation ignores the requirement in the text of the regulation that the group from which a representative claim is selected be defined by a common ground of rejection, the Board's interpretation was both plainly erroneous and inconsistent with the regulation. The Board's disposition of claims 55–57 was, thus, "not in accordance with law," 5 U.S.C. § 706, and is hereby vacated. On remand, the Board should select one of Claims 55–57 and decide the appeal as to the § 103 rejection of Claims 55–57 on the basis of the selected claim.

IV.

■ The Board also committed procedural error in not considering the outstanding § 103 rejection of Claim 64. As with Claims 55–57, there was no § 102 rejection outstanding as to Claim 64. However, unlike Claims 55–57, Claim 64 does share a common ground of rejection with Claim 53, so that selection of Claim 53 as a representative claim for the common ground of rejection was proper. What the Board should have done was to make explicit that it was affirming the § 103 rejection of Claim 64, using Claim 53 as a representative claim in reliance on applicant's grouping of all the claims together. However, this procedural error is harmless. It is well settled that "anticipation is the epitome of obviousness." *Connell v. Sears Roebuck & Co.*, 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed.Cir.1983) (quoting *In re Fracalossi*, 681 F.2d 792, 794, 215 USPQ 569, 571 (CCPA 1982)). In view of

the Board's ability under 37 C.F.R. § 1.192(c)(7) to select Claim 53 as representative of the § 103 rejection common to both Claim 53 and Claim 64, the Board's failure to explicitly affirm the Examiner's final rejection of Claim 64 under § 103 was harmless error.

## V.

▇▇ On the merits, the Board's affirmance of the Examiner's final rejection of Claims 53–54 and 58–64 is correct. Claim 53, the claim selected by the Board for consideration, is very broadly drafted, reading in full as follows: "a method for detoxifying an organophosphorus compound comprising exposing said compound to recombinant bacterial organophosphorus anhydrase." McDaniel argued to the Board that a reference that did not teach the DNA sequence of the bacterial *opd* gene could not anticipate his invention. However, the Board considered only Claim 53, and its determination that "the claimed invention is not directed to the *opd* gene or the use thereof" was correct. *Ex parte McDaniel*, slip op. at 15.

The Board found that McDaniel (BY), Harper, Wild, and McDaniel (AZ) each described "the use of a recombinant bacterial organophosphorus acid anhydrase for the detoxification of an organophosphorus compound." *Id.* at 13. This determination was supported by substantial evidence, as each reference plainly discloses the use of such an enzyme in this way. McDaniel (BY) discloses that "the *opd* gene from *Pseudomonas diminuta* was sequenced and its membrane-associated gene product was expressed in heterologous genetic backgrounds from several promoter systems." McDaniel (BY) at 2306. The resultant recombinant enzyme was determined to be capable of degrading the organophosphorus compound parathion. *Id.* at 2307. Harper discloses the sequence of the *opd* gene from two bacterial species and states that the recombinant enzyme

specifically degrades organophosphorus compounds. Harper at 2586. Wild discloses the cloning of the *opd* gene from *P. diminuta* into *E. coli;* some of the transformed bacteria were found to be "parathion-degrading" and the specific activities of the recombinant enzyme were found to be "similar to those in the native host." Wild at 632. McDaniel (AZ) discloses that:

> [a] plasmid ... was isolated from a *Pseudomonas diminuta* strain (PD3) known to constitutively degrade a variety of organophosphate pesticides, including parathion. The plasmid was sized and partially mapped by restriction endonuclease digestion and a *PstI* digest was used to subclone the entire degradative plasmid into pBR322 and transformed into *E. coli.* One transformant containing pBR322 with an insert of 1270 bp was capable of degrading parathion....

McDaniel (AZ) at iii. Substantial evidence accordingly supported the Board's determination that each of these references teaches a recombinant OPA enzyme and its use in detoxifying organophosphorus compounds.

Nor is there a dispute that a different enzyme is disclosed in the '384 application, as "[a]ppellants have offered no evidence that the anhydrase encoded by the *opd* gene described in the specification differs from the anhydrase explicitly described in McDaniel (BY), Harper, or Wild." *Ex parte McDaniel*, slip op. at 15.

## VI.

McDaniel argues that the McDaniel (BY) and Harper references were not properly prior art and should not have been considered by the Examiner in view of the declaration made by McDaniel. The Director argues that McDaniel should either have filed declarations from the non-inventor co-authors under 37 C.F.R.

§ 1.132 or added the co-authors as inventors under 35 U.S.C. § 116. In light of our affirmance of the rejection of Claims 53–54 and 58–64 based on Wild or McDaniel (AZ), we need not and do not address McDaniel's argument as to the propriety of McDaniel (BY) and Harper as prior art. Thus, our decision does not preclude McDaniel from submitting otherwise proper declarations in an attempt to remove the McDaniel (BY) and Harper references as prior art references in any rejection made in this or any continuation application McDaniel may choose to prosecute.

## VII.

McDaniel also argues that U.S. Patent No. 5,484,728 to Serdar, et al. ("the Amgen patent") claims the same invention but was granted over the same prior art. McDaniel argues that for the same reasons that claims were allowed to Amgen, the similar claims in McDaniel's application should be patentable to him. He thus contends that the rejection of his claims was in error. We disagree. It is well settled that the prosecution of one patent application does not affect the prosecution of an unrelated application. *In re Wertheim*, 541 F.2d 257, 264, 191 USPQ 90, 97 (CCPA 1976) (holding that "[i]t is immaterial in ex parte prosecution whether the same or similar claims have been allowed to others"). Accordingly, McDaniel's arguments with respect to the Amgen patent are unavailing.

## CONCLUSION

The Board's selection of Claim 53 was correct as a matter of law with respect to the § 102 rejections of Claims 53–54 and 58–63, and its construction of Claim 53 was correct. The Board's finding that Claims 53–54 and 58–63 were anticipated by the cited references was supported by substantial evidence. The Board's holding with respect to Claim 64 constituted harmless error, since that claim shared a common ground of rejection with Claim 53. However, the Board erred in failing to consider the outstanding § 103 rejection of Claims 55–57. The judgment of the Board is accordingly

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.*

## COSTS

No costs.

Dissenting opinion filed by Chief Judge MAYER.

MAYER, *Chief Judge*, dissenting-in-part.

Because Steven McDaniel affirmatively stated that "claims 53–64 are all properly of a single group" and stand or fall together, I respectfully dissent from Part III of the court's opinion. McDaniel is the master of his own case, *Air Products and Chemicals v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1562, 225 USPQ 121, 123 (Fed.Cir.1985), and in stating that claims 53–64 stand or fall together, he has waived any argument that claims 55–57 are patentable for reasons independent of claim 53. Therefore, I would hold him to his position, as the Board of Patent Appeals and Interferences did.